## WILSON'S EXECUTORS

### v.

## COBB'S EXECUTORS.

28  177
57  220;

1. The joint prosecution of a lawsuit does not create a partnership between the parties, as to the subject matter in dispute. As to the parties themselves, a partnership cannot be formed by implication or operation of law.

2. That the defendant was a trustee for certain bondholders, cannot aid the complainant, because he is not individually entitled to redress for a wrong done to other persons.

3. An estoppel cannot arise from the mere assertion of a right, made by one party to an agreement and instantly denied by the other, even if such assertion is made in writing and the denial is oral.

4. When the complainant makes the defendant his witness, by requiring him to answer under oath, so much of the answer as is fairly responsive to the bill is evidence, and must prevail as the truth, unless overcome by the oath of two witnesses, or by one witness corroborated by circumstances.

5. A complainant can only recover on the case made by his bill. A defendant is only required to meet such of the complainant's proofs as tend to establish the case made by the bill. All others he may treat as impertinent.

12

On final hearing on bill, answer, replication and proofs.

*Mr. A. Q. Keasbey,* for complainant.

*Mr. T. N. McCarter,* for defendant.

THE VICE-CHANCELLOR.

The main object of this suit is to have it determined whether or not Daniel M. Wilson was joint owner with George T. Cobb of twenty-two bonds of the Rutland and Washington Railroad Company, purchased by Mr. Cobb, in January, 1864, for $7,200, and sold the following June for $30,800.

The suit has been pending since December 30, 1864. Since its institution the defendant has been killed in a railroad disaster, and the complainant has died. The testimony of neither is before the court, except so far as the answer of the defendant is evidence.

The bill alleges, prior to the purchase of the bonds in controversy, the parties were the owners, each in his own right, of certain bonds of the corporation mentioned, and that the twenty-two bonds in dispute were purchased pursuant to a contract, whereby it was agreed the parties should purchase an additional number of bonds (the bill does aver that the number was fixed by the contract) for their joint benefit; and, it is further alleged, the purchase of the twenty-two bonds was effected by the joint efforts and negotiations of the parties. This is the only ground of action alleged in the bill respecting the twenty-two bonds. The complainant must recover, if at all, upon the case made by his bill. He cannot make one case by his bill and another by his proofs, and still have a decree. The defendant has a right, before answering, to be informed, plainly and distinctly, by the bill, of the complainant's cause of action. When proofs are produced, the defendant is only required to meet such of the complainant's proofs as tend to establish the cause of action alleged in the bill. Any proof not tending to support

the bill may be treated as impertinent. Any other rule would render pleadings. not only useless, but would make them, in the hands of cunning practitioners, the instruments of delusion and trick. *Andrews* v. *Farnham*, 2 *Stock.* 94; *Howell* v. *Sebring*, 1 *McCart.* 90; *Marshman* v. *Conklin*, 6 *C. E. Gr.* 546.

On the argument, the counsel of the complainant strenuously insisted that, even conceding the complainant had failed to prove the contract alleged in his bill, and that it clearly appeared Mr. Cobb had purchased the bonds in controversy at his own risk and for his own benefit, still, as the parties individually owned similar bonds, the validity and value of which depended upon the result of a suit then pending in the supreme court of Vermont, which they were jointly prosecuting, Mr. Cobb occupied towards Mr. Wilson a position of trust and confidence with regard to all the bonds in litigation, so that any profit or advantage gained by him in dealing in any part of the subject matter of the lawsuit, enured, by force of legal principles and independent of a promise, to the equal benefit of Mr. Wilson. Stripped of all gloss, the proposition is this: that the joint prosecution of a lawsuit, in the absence of an agreement to that effect, creates between the parties prosecuting it, in respect to the property in dispute, the relation of co-partners, so that they are subject to all the duties and liabilities of co-partners in a mercantile co-partnership. This proposition is manifestly unsound. There is no such thing as a partnership by implication or operation of law. The relation *inter sese* is founded in voluntary contract, and cannot exist independent of it. As to third persons, the relation may exist in spite of an agreement that it shall not. But if the complainant was right in his law, his proposition is incorrect in his statement of the facts. Mr. Cobb and Mr. Wilson were not prosecuting a suit jointly, in their own right, for their exclusive benefit, but the suit referred to had been brought by the trustees of the bondholders to foreclose the first mortgage on the Rutland and Washington railroad. The suit was in the names of

the trustees, and was prosecuted for the benefit of all the bondholders. Mr. Cobb and Mr. Wilson, together with Mr. Joseph W. Taylor, constituted a committee, appointed by the bondholders, to superintend the prosecution of the the suit. It does not appear what powers the appointment conferred. It may be that Mr. Cobb, in accepting the appointment, placed himself in a position of trust towards the other bondholders, so that his purchase of the twenty-two bonds in question would, in a suit by his vendor against him, be regarded as a purchase by a trustee of the property of his *cestui que trust.* But if this be so, it cannot aid the complainant. It gives him no cause of action. He is not entitled to redress for a wrong done some other person. It is enough to say of this claim, it is not set up in the bill, and if it had been, it would not have given the complainant a right to relief.

As already remarked, the complainant's sole ground of action, set up in his bill, in respect to the twenty-two bonds, is a contract. He must prove the contract or fail. He required the defendant to answer under oath. The defendant denies the contract as broadly and positively as language can do it. This denial must prevail as the truth, unless overcome by the oaths of two witnesses, or by one witness supported by circumstances, or by equivalent evidence. *Brown* v. *Bulkley,* 1 *McCart.* 294. It is not shown Mr. Wilson had the slightest connection with the purchase of the twenty-two bonds, nor even that he knew it was to be made. He furnished no money for their purchase, and never offered re-imbursement. His case is utterly barren of everything in the nature of proof tending to show the slightest negotiation between the parties, upon any subject, prior to or cotemporaneous with the purchase, except the admission of Mr. Cobb, in his answer, that before he made the purchase he solicited Mr. Wilson to join him in a purchase of bonds, and he understood him to refuse. There is not a word of direct evidence attesting the existence of the contract, and

that arising from circumstances is too faint, in my judgment, to be made the foundation of a judicial determination.

Two circumstances are mainly relied on. First, a writing dated March 17, 1864, evidently drawn for the signature of such of the bondholders as desired one of the trustees to resign, in order that a new trustee might be appointed. It begins, " We, the undersigned, holders of the bonds secured," &c., and is twice signed by Mr. Cobb, but by no other person. Opposite the first signature are the words, " twenty-nine bonds," and opposite the second, " twenty-two bonds." It is argued if Mr. Cobb had been the sole owner of the number of bonds set opposite each signature, he would naturally, in signing the paper, have placed the whole number of bonds opposite a single signature, and not separated from the others just the number Mr. Wilson claimed an interest in. But it is not enough to raise a suspicion, or even to show Mr. Cobb was not sole owner; it must be shown Mr. Wilson was joint-owner. This paper was put in evidence by the complainant, but where or how it was obtained, or what is its history, does not appear. It is conjectured it was sent by Mr. Cobb to Mr. Wilson for his signature, but if it was, why did he not sign it? The court cannot proceed on conjecture; it must have proof.

The second circumstance relied on is an agreement executed February 12, 1864, by Mrs. Sarah Bruen, the executors of William D. Bruen, deceased, Mr. Cobb and Mr. Wilson. It first recites, " We, the subscribers, owners of the number of bonds set opposite our respective names," &c., and then agrees that the parties shall place their bonds in the hands of Mr. Cobb, that no sale shall be made without his consent, authorizes him to sell, and then provides that the proceeds of sale shall be divided among the parties in proportion to the number of bonds owned by them respectively. It is signed by Mr. Cobb, and opposite his name, under the words, " No. of bonds," are the figures 29. It was next signed by Mr. Wilson, then by Mrs. Bruen; following her signature are those of the executors of William D. Bruen,

deceased, and then, on the next line below, appears again the signature of Mr. Cobb, with the word " twenty-two " opposite, and immediately under this last signature of Mr. Cobb is the character " &," and on the next line below the signature of Mr. Wilson.

Standing alone and unexplained, this paper, it must be conceded, is a clear admission by Mr. Cobb that Mr. Wilson was joint owner of the twenty-two bonds. If the case stood on this paper alone, it would be free from difficulty ; but it does not. Three of the persons who were present at its execution have testified to what occurred when Mr. Wilson signed the second time, and connected his signature by the character " & " with that of Mr. Cobb. In making out his principal case, the complainant called the subscribing witness, who, in his direct examination, testified Mr. Cobb signed for the twenty-two bonds first, and Mr. Wilson immediately after ; that no remark or question was made by any one respecting Mr. Wilson's act, and there was no controversy between Mr. Cobb and Mr. Wilson concerning the twenty-two bonds.

The other two witnesses, who were called by the defence, give a very different account of the affair. The one says, when Mr. Wilson signed the paper the second time, Mr. Cobb asked, " Why do you do that ?" and seemed to be displeased ; and the other says, when Mr. Cobb discovered Mr. Wilson had connected his name with his as owner of the twenty-two bonds, he asked him why he had done so, and that Mr. Wilson answered, because he had a right; to which Mr. Cobb replied, with emphasis, " You have not, sir." More than seven years had elapsed between the occurrence and the time when these witnesses were required to testify. It is not surprising they differ. Lapse of time obscures all recollections, the best as well as the worst. The conflict in this case arises entirely from infirmity of memory. The subscribing witness declares, no doubt conscientiously, that no remark or question was made respecting the second signature of Mr. Wilson, simply because all

recollection of that part of the transaction is obliterated from his memory.    He sincerely believes that what the other two witnesses swear did occur, did not, because that part of the scene has been so completely rubbed from his memory as to leave him in the same condition, as to that, as though he had not been present at all.    There can be no doubt, according to the legal rule, negative evidence must give way to affirmative.    I think it must, therefore, be held, though the written paper, standing alone, shows a case for the complainant, yet when reviewed in the light of facts, which are proved to have occurred at its execution, and constituted an essential part of its execution, it amounted, at most, simply to an assertion of a right by Mr. Wilson, which, the moment it was made, was denied by Mr. Cobb. The paper was made to speak for Mr. Wilson and against Mr. Cobb, by Mr. Wilson's act.    Silence or acquiescence would have made it Mr. Cobb's act, but no man can be bound by the act of another which he promptly and clearly repudiates.

In my judgment, the contract on which the complainant's action, in respect to the twenty-two bonds is founded, is not proved.    There is nothing in the case which would warrant the application of the doctrine of estoppel to the defence. It is manifest an estoppel cannot arise from the mere assertion of a right, even if it is made in writing, by one party to an agreement which the other instantly denies, though the denial is made orally.    The fundamental idea of the doctrine of estoppel is to prevent a person from denying, to the prejudice of another, what he has once clearly admitted to be true, and thereby induced the other to place himself in a position he would not have taken if the admission had not been made.    It is obvious the complainant has no right to invoke the aid of such a principle of law in this case.

When Mr. Cobb exercised the power of sale given to him by the agreement of February 12, 1864, by his contract with the purchaser, he left it optional with Mr. Wilson whether or not his bonds should be included.    Mr. Wilson

afterwards directed the delivery of his forty-three bonds to Mr. Cobb, and that they should be included in the sale. Payment for them was made to Mr. Cobb. He admits there remains in his hands, of the proceeds of the sale of the forty-three bonds, $1,003.95. Of this, he claims a right to retain $1,000 for his services. Their nature and value are not shown. The burden is on him. Nothing is shown but the sale, receipt and disbursement of the money. The amount received was over $60,000. Its receipt, custody and transmission was attended with some labor, expense and responsibility. For these, compensation may be allowed. I think $100 will be adequate. This is the best judgment I can form upon the proofs before me. If it is inadequate, it is so because the proofs are insufficient. The main relief asked must be denied.

I will advise a decree that the complainant shall recover $903.95, with interest from July 27, 1864, at the rate of six per cent., and also costs.